<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MASTER CALL COMMUNICATION, INC., | |
| Plaintiff, | Civ. No. 09-924 (GEB) |
| v. | **MEMORANDUM OPINION** |
| WORLD-LINK SOLUTIONS, INC., WORLD-LINK TELECOM, INC. d/b/a ONESTOPTEL and PAUL STAMOULIS | |
| Defendants. | |

<u>**BROWN, Chief Judge**</u>

      This matter comes before the Court upon plaintiff Master Call Communication, Inc.'s ("Plaintiff" or "Master Call") motion for an order to show cause and preliminary injunction [Docket No. 1]. A hearing was held on March 23, 2009, relating solely to the issue of this Court's jurisdiction over the matter. The Court, having considered the parties' submissions and oral arguments, and for the reasons discussed below, dismisses Plaintiff's motion for lack of jurisdiction.

**I.  BACKGROUND**

    **A.  Facts**

        **1.  The Agreement**

      Plaintiff is a New Jersey corporation engaged in the business of providing telecommunications services. (Compl., ¶ 1 [Docket No.1]). Defendants World-Link Solutions, Inc. ("World-Link) and World-Link Telecom, Inc. ("Telecom"), also New Jersey corporations, operate local and long distance telephone service companies, providing such services to retail and wholesale customers, respectively. *Id.* at ¶¶ 2-3. World-Link and Telecom operated their businesses at the same location and share certain machinery and equipment, software and

personnel. (Def.'s Br. at 1 [Docket No. 8]). Defendant Paul Stamoulis (together, with World-Link Solutions, Inc. and World-Link Telecom, Inc., "Defendants") is a resident of New Jersey and the President of World-Link Solutions, Inc. (Compl., ¶ 4).

On October 28, 2008, World-Link, Master Call and Telecom executed an Asset Purchase and Security Agreement (the "Agreement")[1], whereby Master Call agreed to purchase, among other things: (1) certain of World-Link's equipment, including telephones, computers, furniture, fixtures and billing and accounting software; (2) World-Link's customer base for its local/domestic, international and prepaid calling cards lines of business; (3) World-Link's prepaid customers; (4) the name "World-Link"; and (5) World-Link's website. (Agreement, Art. 1.a–e, g, k, l, p). In exchange, Master Call agreed to pay World-Link a total of $4.5 million (the "Purchase Price"), with $1.66 million due at closing and the remaining $2.84 million subsequently due in set increments on either a quarterly or monthly basis. *Id.* at Art. 5.a-e. The Agreement also provided that World-Link and Telecom would provide transitional telephone services to Master Call post-closing and that several of World-Link's employees would go to work for Master Call upon closing. *Id.* at Arts. 22, 18. World-Link also represented that its gross annual sales for the fiscal year ending in May 31, 2008 were approximately $6.4 million, within a variation of 5 percent. *Id.* at Art. 14.5.2.

As security for the balance of the Purchase Price, Master Call granted World-Link an interest in its assets and also agreed to allow World-Link to hold its database and customer list in escrow until the total Purchase Price was paid. *Id.* at Arts. 8, 13. The Agreement further provided that, in the event that Master Call breached any of its payment obligations, World-Link was required to provide Master Call with notice of default and give Master Call 30 days from receipt of such notice to cure the default. *Id.* at 21. If Master Call did not cure the default within those 30 days and if certain other conditions were not met, World-Link would have the right to

---

[1] Although Mr. Stamoulis signed the Agreement on behalf of both World-Link and Telecom as well as on behalf of himself as an individual, the Addendum indicates that Mr. Stamoulis is not personally liable under the Agreement. (Agreement, Addendum, ¶ 5).

enforce its rights and remedies under Part 6 of Article 9 of the Uniform Commercial Code, including, without limitation, the right to use its database and customer list. *Id.* at Art. 21.

The Agreement also required the parties to enter into a sublease, through which Master Call would sublet approximately 80 percent of World-Link's office premises located at Suite 1101, 11th Floor, 42 Broadway, New York, New York (the "Property"), for a certain period of time. *Id.* at Arts. 22, 11.  On October 31, 2008 Master Call and World-Link entered into such a Sublease Agreement ("Sublease").  (Sublease, attached as Exh. C. to Aff. of Paul Stamoulis ("Stamoulis Aff.") [Docket No. 8]).  MasterCall and Telecom also entered into two further agreements: a Research and Development Agreement and a Consultancy Agreement ("Ancillary Agreements"). *See* Exhs. D. and E to Stamoulis Aff., respectively.

A closing was held on October 31, 2008, at which time Master Call tendered the initial $1.6 million of the Purchase Price as was required by the Agreement. (Def.'s Br. at 5).  Shortly thereafter, several disputes arose between the parties.  Plaintiff alleges that: (1) Defendants failed to deliver certain customers as promised due to their failure to pay outstanding debts owed to the carriers of such customers; (2) Plaintiff has not been permitted access to the Property, certain equipment and software and has not been permitted use of Defendants' website; (3) Defendants engaged in a practice called "rounding up," further described below, thereby falsely inflating the amount of revenue it received on a monthly basis; (4) Defendants failed to indemnify Plaintiff with respect to certain outstanding debts as required under the Agreement; and (5) Defendants failed to provide transitional services as required under the Agreement. (Aff. of Rouslan Tsoutiev ("Tsoutiev Aff."), ¶¶ 7, 23-25, 29, 33, 40, 72, 73 [Docket No. 1]).

For their part, Defendants allege that has failed to: (1) account for its accounts receivable or turnover the proceeds thereof as required by the Agreement; (2) pay for the transitional services Defendants have provided; and (3) pay rent. (Stamoulis Aff., ¶ 12.)  As a result, Defendants sent a Notice of Default ("Notice") to Plaintiff on January 20, 2009, stating that Plaintiff had defaulted under the Agreement, the Consultancy Agreement and the Sublease. *Id.* at

3

¶ 14; *see also* Notice, attached as Exh. G to Stamoulis Aff. Negotiations subsequently took pace between the parties; however the parties were not able to resolve the dispute. (Stamoulis Aff., ¶ 15). Pursuant to the Agreement, the period in which Master Call may cure its default was set to expire on March 2, 2009. *Id.* at ¶ 16. The parties agreed to extend the cure period until March 4, 2009. *Id.* However, on March 3, 2009, Plaintiff filed the complaint and instant motion, seeking both damages as well as to enjoin Defendants from repossessing and using its equipment, software and customer list. [Docket No. 1].

### 2. Plaintiff's Allegations Regarding "Rounding"

In its Complaint, Plaintiff asserts several causes of action against Defendants, including various allegations of fraud, misrepresentation, and breach of contract. *See generally* Compl. Plaintiff also alleges that Defendants have violated Section 202 of the Communications Act of 1934 (the "Act"), 47 U.S.C. § 151 et. seq., by engaging in a practice known as "rounding," where Defendants charged customers for calls that did not go through, rounded up connected calls in three minute increments, and failed to inform its customers of such charges. (Compl., ¶¶ 11, 12). Plaintiff also alleges that Defendants would select which customers to subject to these practices at random and without notice to these customers and that these rounding practices resulted in additional billings of approximately $38,000 a month. *Id.* at ¶ 13. Plaintiff also asserts that it does not engage in rounding and was unaware of Defendants' rounding practices until after it had purchased World-Link's customer list and database pursuant to the Agreement. *Id.* at ¶¶ 13-15. Plaintiff alleges that, as a result of Defendant's failure to disclose its rounding practices prior to the sale, Plaintiff's revenues from the purchased World-Link assets are significantly lower than it anticipated. *Id.* at ¶¶ 18-19.

### B. Procedural History

Defendants filed their opposition on March 9, 2009 [Docket No. 8] and Plaintiff filed its reply on March 19, 2009 [Docket No.13]. On March 23, 2009, the Court held a hearing regarding Plaintiff's motion. [Docket No. 20]. The Court stated that it would first consider the

issue of whether it has jurisdiction over the matter before reaching the merits of the case. (Mar. 23, 2009 Hrg. Tr. ("Hrg. Tr".) at 32:23-33:1).

## II.     Discussion

### A.     Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *See Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 383 (1884). "[T]hey have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986). As such, it is undisputed that

> [a] federal court must have subject matter jurisdiction in order to hear a case. Subject matter jurisdiction in federal court falls within two categories of disputes: (1) diversity cases pursuant to 28 U.S.C. § 1332, encompassing disputes between citizens of different states alleging an amount-in-controversy in excess of $75,000; and (2) federal question cases pursuant to 28 U.S.C. § 1331, encompassing those disputes 'arising under the Constitution, laws, or treaties of the United States.'

*Scioscia v. Target Corp.*, No. 08-2593, 2008 U.S. Dist. LEXIS 53508, at *3 (D.N.J. July 14, 2008).

In the instant case, there is no diversity of citizenship between the parties. (Compl., ¶¶ 1-4). As such, in order for the Court to have jurisdiction over the matter, it must fall within the purview of 28 U.S.C. § 1331 as a "federal question" case in that it "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Plaintiff argues that Defendants' rounding practices constitute a violation of 47 U.S.C. § 202(a) and as such, this Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331. (Pl.'s Rep. at 13; Hrg. Tr. 14:4-16; 43:4-14). Defendants argue that this Court does not have jurisdiction over the matter because there is no federal question presented to serve as a basis for subject matter jurisdiction. (Defs.' Opp. at 10).

### B.     The Communications Act of 1934

The Communications Act of 1934 requires that common telephone service carriers' "charges, practices, classifications, and regulations for and in connection with . . .

5

communication service, shall be just and reasonable and any such charges, practices, classifications or regulations that is unjust or unreasonable is declared to be unlawful." 47 U.S.C. § 201(b). 47 U.S.C. § 202(a) further provides:

> It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.

47 U.S.C. § 202 (a). Plaintiff alleges that Defendants' rounding practices violate this section, presumably because they inflict this practice upon its customers in an arbitrary manner. (Compl., ¶¶ 12-19; Pl.'s Rep. at 12-13).

However, "[i]n determining whether the plaintiff has a right [to bring suit] under the Act, the proper focus is not section[] 202(a) . . . but the Act's liability and damages provisions, Sections 206 and 207 of that Act." *Law Offices of Curtis v. Trinko, L.L.P. v. Bell Atl. Corp.*, 305 F.3d 89, 98 (2nd Cir. 2002), *rev'd on other grounds sub nom.*, *Verizon Comm'cns., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004). Section 206 provides:

> In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

47 U.S.C. § 206. Section 207 provides:

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

47 U.S.C. § 207.  These sections are written broadly and encompass all of the substantive provisions of the Act. *Trinko,* 305 F.3d at 98.  Further, while a particular substantive provision of the Act may not provide an individual with a particular right, if the violation of that provision injures the individual, sections 206 and 207 confer upon that individual the right to bring an action to recover for its injuries.  *Id.*  Plaintiff asserts that it has a right to bring suit Section 207, arguing that it is a "person claiming to be damaged" by Defendants' rounding practices. (Hrg. Tr. 14:25-15:1).

> **C.    The Practice of Rounding Can Be Asserted as a Claim under The Communications Act of 1934**

Defendants first argue that this Court does not have jurisdiction over this matter because the practice of rounding is not a claim under the Act. (Defs.' Opp. at 10).  As support for this assertion, Defendants cite *Weinberg v. Sprint Corp.*, 165 F.R.D. 431 (D.N.J.). *Id.*; *see also* Hrg. Tr. 11:19-12:5.  However, as Plaintiff notes, that case is distinguishable from the instant case.  In *Weinberg*, the plaintiff alleged that the defendant telephone company engaged in deceptive and misleading advertising and promotional practices and brought suit in state court for fraud, negligent misrepresentation, and violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq. Weinberg*, 165 F.R.D. at 435.  The defendant removed the action to federal court, arguing that the plaintiff's claims were preempted by and arose under the Communications Act of 1934 and the plaintiff filed a motion to remand the case back to state court. *Id.* The Court granted plaintiff's motion, holding that under the well-pleaded complaint rule "'federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint,'" and that, as set forth in the complaint, plaintiff's claims are based solely on New Jersey common and statutory law without reference to federal law.  *Id.* at 436 (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

Here, Plaintiff explicitly alleges in the Complaint that Defendants' rounding practices violate the Act.  (Compl., ¶¶ 11-19).  As such, this case is inapposite from the circumstances in *Weinberg*.  Further, at least one other Court has held that the question of whether rounding

7

practices are legal is a permissible inquiry under the Act. *See Lee v. Contel Cellular of the South*, No. 95-1057, 1996 U.S. Dist. LEXIS 19636, at *8-*9 (S.D. Ala. Nov. 25, 1996) (holding that state law claims relating to rounding were preempted by 47 U.S.C. § 201 because "a court cannot assess the use of . . . [a] 'rounding' practice in calculating bills without deciding if the rates resulting from that practice are 'unreasonable' or 'unjust'" as defined by the Act.) Thus, Defendants argument that "rounding" cannot not be asserted as a violation of the Act is not persuasive.

        **D.**        **Standing Under The Communications Act of 1934**

Defendants also argue that this Court does not have jurisdiction over Plaintiff's claims because Plaintiff does not have standing to maintain an action under the Act. (Defs.' Opp. at 10). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (citation omitted). "Both limits are 'founded in concern about the proper -- and properly limited -- role of the courts in a democratic society.' *Trinko* 305 F.3d at 97 (citing *Warth*, 422 U.S. at 498 (further citations omitted)).

Article III of the Constitution provided the constitutional aspect of the standing doctrine and confines federal courts to adjudicating 'cases' and 'controversies.' *Trinko* 305 F.3d at 97. To meet the constitutional test for standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.* (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984) (further citation omitted)).

With respect to the judicially created doctrine of prudential standing, "[f]oremost among the prudential requirements is the rule that a party must 'assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"*Trinko* 305 F.3d at 97 (citing *Wight v. BankAmerica Corp.*, 219 F.3d 79, 86 (2nd Cir. 2000) (quoting *Warth*, 422 U.S. at 499) (internal quotations omitted). "The source of the plaintiff's claim to relief

assumes critical importance with respect to the prudential rules of standing. . . . Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Trinko* 305 F.3d at 97 (citing Warth, 422 U.S. at 500) (further citations omitted).

Here, Plaintiff alleges that Defendants' rounding practice violates Section 202 of the Act. As such, the issue is whether either Section 206 or 207 of the Act confers upon Plaintiff a right to judicial relief for such alleged violations.

### 1. A Party Need Not Be a Customer of Defendant in Order to Bring Suit for Violations of The Communications Act of 1934.

Secondly, Defendants argue that because Plaintiff is not a customer of Defendants, it does not have standing to sue under the Act. (Defs.' Opp. at 10 (citing *Panatronic U.S.A. v. AT&T Corp.*, 287 F.3d 840 (9th Cir. 2002))).  Specifically, Defendants allege that Plaintiff has asserted a "garden variety breach of contract and damage claim" and that Plaintiff is "attempting to boot strap subject matter jurisdiction by alleging that the practice of rounding." (Defs.' Opp. at 10-11).

Plaintiff argues that it has the right to sue for such violations pursuant to Section 207 of the Act. (Hrg. 14:25-15:1).  Plaintiff asserts Section 207 of the Act does not require that persons bringing suit for injuries under the Act be customers. (Pl.'s Rep. at 13).  Plaintiff cites several cases to support this contention, but focuses primarily on *Global Crossing v. Telecommns.*, 550 U.S. 45 (2007).  (Pl.'s Rep. at 13-14; Hrg. Tr. 12:20-17:9).  Specifically, Plaintiff argues that *Global Crossing* stands for the proposition that, in order to bring suit under Section 207, a plaintiff only need allege that it has been injured by a defendant's violation of some aspect of the Act.  (Hrg. Tr. 15:4-16).  As such, the fact that Plaintiff is not a customer of Defendants is immaterial for purposes of standing.  *Id.*

Defendants counter that, while *Global Crossing* incrementally expands who may assert standing under the Act to certain non-customers in limited circumstances, it does not confer standing upon Plaintiff in the instant matter.  (Hrg. Tr. 46:20-24).  Defendants further argue that, in *Global Crossing*, the plaintiff's right to recover damages was conferred upon it by a regulation

9

promulgated by the Federal Communications Commission ("FCC") under the Act.  *Id.* at 19:21-20:17.  Conversely, Defendants contend, in the instant case Plaintiff is not suing Defendants pursuant to a right conferred upon it by any FCC regulation but instead is suing for breach of contract and warranties relating solely to the Agreement, Sublease and Ancillary Agreements. *Id.* at 20:18-21:2.

In *Global Crossing*, a payphone operator brought suit against a long-distance communications carrier pursuant to Section 201(b) of the Act for failure to reimburse the carrier for free payphone calls as it was required to do pursuant to an FCC regulation promulgated under the Act.  *Global Crossing*, 550 U.S. at 51-52.  The payphone operator argued that the long-distance carrier's refusal to pay amounted to a violation of Section 201(b) and thereby permitted it to sue in federal court under Section 207 for the compensation owed.  *Id.* at 52.

The United States  Supreme Court upheld the regulation, reasoning that "private litigants have long assumed that they may, as the statute says, bring an action under § 207 for violation of a rule or regulation that unlawfully implements § 201(b)."  *Id*. at 54.  The Court then ruled that the FCC regulation lawfully implements Section 201(b)'s "un-reasonable practice" prohibition holding that Congress has delegated to the FCC the authority to address ambiguities in the statute or fill spaces in the enacted law where Congress has not previously spoken to the point at issue. *Id.* at 58-59.  The Court also addressed Justice Thomas' dissent, in which he argued that the regulation was invalid because Sections 201(a) and (b) relate only to practices that harm carrier customers, not carrier suppliers. *Id.* at 62.  In rejecting this argument, the Court noted that the regulation is tied to the unique relationship between the payphone operator and long-distance carrier:

> The long-distance carrier ordered by the FCC to compensate the payphone operator is so ordered in its role as a provider of communications services, not as a consumer of office supplies or the like. It is precisely because the carrier and the payphone operator jointly provide a communications service to the caller that the carrier is ordered to share with the payphone operator the revenue that only the carrier is permitted to demand from the caller.

*Id.* at 63 (citations omitted).   The Court reasoned that this unique relationship further supported upholding the regulation at issue.  *Id.*

Plaintiff also cites several other cases in support of its argument.  (*See* Pl.'s Rep. at 13-14 (citing *Manasher v. NECC Telecom*, No. 06-10749, 2007 U.S. Dist. LEXIS 68795 (E.D. Mich. Sept. 18, 2007); *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003)); Hrg. Tr. 38:5-40:2-40:3-43:3 (citing *APCC Servs., Inc. v. Qwest Commc'ns Corp.*, No. 01-6141, 2007 U.S. Dist 78926 (D.D.C. Oct. 25, 2007);*Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*, No. 05-6734T, 2007 U.S. Dist. LEXIS 3616 (W.D.N.Y. Jan. 18, 2007))). However, these cases do little to bolster Plaintiff's assertion that non customers may bring suit under the Act.  In the majority of these cases, the plaintiffs were in fact residential or commercial customers who purchased communications services from the defendant carriers.  *See Manasher,* 2007 U.S. Dist. LEXIS 68795 at \*2, *Ting*, 319 F.3d at 1130; *Star Direct*, 2007 U.S. Dist. LEXIS 3616 at \*3.[2]

Similarly, Defendants cite *Panatronic U.S.A. v. AT&T Corp.*, 287 F.3d 840 (9th Cir. 2002) in support of their argument against jurisdiction. (Defs.' Opp. at 10).  However, that case is equally unhelpful because, in that class action suit, the Court held that the plaintiff lacked standing to pursue a claim under the Act because it was a residential customer and therefore was not part of the business class on behalf of which the action was brought.  *Panatronic U.S.A.,* 287 F.3d at 844.

A case that is more instructive but was not cited by either party is *Law Offices of Curtis V. Trinko, L.L.P, v. Bell Atlantic Corp.*, 305 F. 3d 89 (2nd Cir. 2002), *rev'd on other grounds sub nom.*, *Verizon Commc'ns., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004).  In that case, the plaintiffs were purchasers of local telephone service from a competing carrier.  *See Trinko*, 294 F.3d at 94-95.  Those plaintiffs claimed they were damaged when Bell Atlantic

---

[2] With respect *APCC Services*, Plaintiff cites this case to demonstrate that APCC Services, which was not a customer of the defendant services carrier, was permitted to bring an action under the Act.  *APCC Servs., Inc.*, 2007 U.S. Dist 78926*,* at \*2.  However, as Plaintiff acknowledges, the Court in that case did not perform any analysis of the jurisdictional question.  *Id.*; *see also* Hrg. Tr. 25:24-26:9.

denied their local service carrier, AT&T, equal access to the local network. *See id.* They alleged violations of section 202(a) of the Communications Act of 1934; violations of subsections (b) and (c) of section 251 of the Telecommunications Act of 1996; violations of section 2 of the Sherman Antitrust Act; and tortious interference with contract. *See id* at 95.

After reviewing the legislative history of the 1996 Act, the Second Circuit reviewed the procedural history of the case under its review. *See id.* at 94-95. The Court observed that AT&T had negotiated and arbitrated an interconnection agreement with Nynex, the incumbent local exchange carrier ("ILEC") in the New York area. *See id.* Shortly after the creation of that agreement, AT&T filed complaints with the regulatory authorities alleging lost and delayed orders. *See id* at 95. Nynex and AT&T entered into a consent decree and resolved their dispute in its entirety. *See id.*

Bell Atlantic moved to dismiss the plaintiffs' claims, and the District Court granted the motion with respect to the antitrust and Communications Act of 1934 claims and declined to retain jurisdiction over the remaining state law claims. *See id.* at 96. In so doing, the District Court determined that only the customers of an incumbent carrier could state a claim under section 202(a) of the Communications Act because that section creates duties for the carrier with respect to its own customers. *See id.*

On appeal, Second Circuit considered whether the plaintiffs had standing to bring a claim under section 202(a) of the Communications Act and section 251(b) and (c) of the Telecommunications Act. *See id.* The Second Circuit found that the District Court had incorrectly dismissed the claims on the grounds of prudential standing and re-instated the section 202(a) claims. *See id.* at 98-100. In so doing, the Court reasoned that the district court incorrectly "assumed that the plaintiff's right to bring suit under the Communications Act originates from section 202(a)." *Id.* at 99. The Court reasoned that, while the text of section 202(a) broadly prohibits discrimination against "any particular person, class of persons, or locality," the district court wrongly characterized section 202(a) as only creating a duty between a

communications provider and its direct customer. *Id.* The Court then noted that under the district court's theory, only AT&T would have a section 202(a) action against Bell Atlantic. *Id.*

The court reasoned that "the plaintiff's right to sue does not stem from section 202(a)" but instead originates from sections 206 and 207, which makes parties who violate the Communications Act liable to parties they injure through such violations." *Id.* The court noted that the plaintiffs alleged that they were injured by this violation of the Communications Act because they received poor local phone service and held that as parties that contend that they were injured by Bell Atlantic's alleged violation of section 202(a), plaintiffs plainly meet the requirements for having an action under sections 206 and 207. *Id.*

In light of the foregoing, it is clear that a plaintiff need not be a customer in order to bring suit against a telecommunications carrier under the Communications Act of 1934. As noted in *Trinko*, a plaintiff's right to sue under the Act originates from Sections 206 and 207, which make parties who violate the Act liable to parties they injure through such violations. *Trinko*, 305 F. 3d at 99. Further, under *Global Crossing*, the Supreme Court made clear that a plaintiff who is not a customer of a defendant service company may nevertheless bring suit against that defendant under the Act when the FCC has promulgated a regulation conferring a right on the plaintiff. *Global Crossing*, 550 U.S. at 58-59. As such, a plaintiff need only allege that it has suffered an injury as a result of the defendant's violation of the Act. A customer-seller relationship is not required in every instance.

### 2. Plaintiff has Failed to Allege an Injury Sufficiently Related to a Violation of The Communications Act of 1934

Although a plaintiff need not always be a customer of the defendant in order to bring suit under the Act, Plaintiff in the instant case nevertheless cannot maintain an action under Section 202 because the injury it alleges is not sufficiently related to Defendants' purported violation of the Act. In order to maintain an action under the Act, a plaintiff must allege that it has suffered a direct harm as a result of defendant's violation; the plaintiff may not assert an injury that is wholly derivative of the injury suffered by another. *Trinko*, 305 F.3d at 100.

With respect to its injury, Plaintiff argues that it is not asserting an injury that is derived from Defendants' former customers. (Hrg. Tr. 13:11-14:1). Instead, Plaintiff argues that Defendants failed to disclose its rounding practices to Plaintiff prior to Plaintiff's purchase of World-Link's customer list and that as a result, Plaintiff's revenue from the purchased World-Link customers is significantly lower than what it anticipated. *Id.*; Compl. ¶¶ 13-15, 18, 19.[3]

As Defendants assert, Plaintiff's alleged injury is nothing more than a "garden variety breach of contract claim." (Defs.' Opp. at 10-11). Plaintiff alleges that they contracted with Defendants to purchase World-Link's customer list for a certain amount of money based on certain expectations regarding the revenue it would incur as a result of that purchase. Plaintiff also asserts that these expectations were not met due to Defendants' failure to disclose the actual amount of revenue derived from these customers. The injuries complained of relate solely to Defendant's alleged breach of the Agreement. Unlike the plaintiff in *Global Crossing*, Plaintiff cannot point to an FCC regulation conferring a right to bring suit under the Act. *Global Crossing*, 550 U.S. at 51-52. Further, unlike the parties in *Global Crossing*, who were jointly providing communication services, there does not exist a unique relationship between the parties such that a breach of the Agreement should be held to be a violation of the Act. *Id.* at 58-59. In *Trinko*, the court held that the plaintiffs had alleged that they had suffered a direct harm from

---

[3]Plaintiff also alleges that it may suffer further injury if the Court fails to grant its motion, thereby allowing Defendants to resume use of World-Link's customer list and their rounding practices. (Pl.'s Rep. at 14). Plaintiff argues that if it were ultimately to prevail in this litigation and regain the right to use the customer list, Plaintiff will have suffered an irreparable harm in that several customers will have switched service providers upon discovery of Defendants' rounding practices and will not be returned to Plaintiff. *Id.*; *see also* Hrg. Tr. at 53:8-11. However, as Plaintiff concedes, this argument goes to the merits of Plaintiff's case with respect to the issuance of a preliminary injunction, which the Court will not consider until it has addressed the jurisdictional issue. *Id.* at 53:2-14; *see also Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) (In deciding whether to issue a preliminary injunction, a court must consider: (1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest.)

defendant's violations of the Act: poor telephone service. *Trinko*, 305 F.3d at 100. Here, Plaintiff's injury, a loss of expected revenue from purchased customers, is directly related to Defendants purported *misrepresentation* regarding their revenue, not its rounding practices. As such, plaintiff has not asserted a harm that can be directly attributable to Defendants' alleged violation of the Act and the Court does not have jurisdiction over Plaintiff's claim pursuant to 47 U.S.C. § 202(a).

### E. State Law Claims

As discussed above, Plaintiff also asserts various state law claims. Pursuant to 28 U.S.C. § 1367(c)(3), a District Court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." Such a determination is discretionary and "[t]he general approach is for a district court to . . . hold that supplemental jurisdiction should not be exercised when there is no longer any basis for original jurisdiction." *Edlin Ltd. v. City of Jersey City*, No. 07-3431, 2008 U.S. Dist. LEXIS 41118, at *7 (D.N.J. May 23, 2008) (quoting *Atkinson v. Olde Economie Fin. Consultants, Ltd.*, No. 05-772, 2006 U.S. Dist. LEXIS 54289 (W.D. Pa. Aug. 4, 2006)); *see also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) ("pendent jurisdiction 'is a doctrine of discretion, not of plaintiffs right,' and that district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons") (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). In this case, Plaintiff's federal claim is being dismissed at this time and there is no longer any basis for original jurisdiction. Thus, the Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining state law claims.

### III. CONCLUSION

For these reasons, Plaintiff's motion for an order to show cause and preliminary injunction [Docket No. 1] is dismissed for lack of jurisdiction. An appropriate form of order is filed herewith.

Dated: April 6, 2009

    /s/ Garrett E. Brown, Jr.    
GARRETT E. BROWN, JR., U.S.D.J.
